**F I L E D**

UNITED STATES COURT OF APPEALS

**JUL 9 2004**

FOR THE TENTH CIRCUIT

ENERGY WEST MINING
COMPANY,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR,

Respondent.

No. 03-9575
(Agency Nos. 02-0441 BLA
&
01-0886 BLA)
(Petition for Review)

ODESSA JONES, Widow of
Clell Jones,

Intervenor.

ORDER AND JUDGMENT *

Before **EBEL** , **ANDERSON** , and **BRISCOE** , Circuit Judge.

---

*      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Claimant Odessa Jones, widow of Clell M. Jones, a retired coal miner, filed a claim against her husband's former employer, Energy West Mining Company, for survivor's benefits under the Black Lung Benefits Act (the "Act"), 30 U.S.C. §§ 901-945, alleging that pneumoconiosis [1] stemming from Mr. Jones' employment as a coal miner was a substantially contributing cause of his death. *See* 20 C.F.R. § 718.205(c). An administrative law judge (ALJ) ruled in favor of Mrs. Jones, and the Benefits Review Board (the "Board") affirmed the award of benefits. Energy West now petitions for review. We exercise jurisdiction under 30 U.S.C. § 932(a) (incorporating into the Act the appeal provisions of 33 U.S.C. 921(c)), and we affirm.

Mr. Jones worked in a coal mine for over eighteen years, working primarily as a shuttle car operator in an environment with substantial exposure to coal dust. He retired in 1985 at the age of sixty-three due to breathing problems. His

---

[1] Pneumoconiosis, commonly referred to as black lung disease, is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a).

breathing difficulties grew worse and he was placed on supplemental oxygen in 1996. Mr. Jones was hospitalized with breathing problems for a month prior to his death in June 1998. The death certificate identified respiratory failure due to pulmonary fibrosis as the cause of Mr. Jones' death. Mrs. Jones then filed her claim for survivor benefits.

Following a hearing, the ALJ issued a forty-one page decision and order granting benefits to Mrs. Jones. The ALJ determined that the evidence of record was sufficient to establish that coal workers' pneumoconiosis caused or hastened Mr. Jones' death. The Board affirmed the award of benefits in September 2002.

We review the Board's decision "to decide whether the Board correctly concluded that the ALJ's decision was supported by substantial evidence and not contrary to law." *N. Coal Co. v. Dir., OWCP*, 100 F.3d 871, 873 (10th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotations omitted). "[I]n deciding whether substantial evidence exists to support the ALJ's decision, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the trier of fact." *Id*. (quotation omitted).

"Under the regulations, a finding of pneumoconiosis may be based on any of the following: (1) a chest X-ray; (2) a biopsy or autopsy; (3) certain regulatory presumptions; or (4) a physician's sound medical judgment based on objective

medical evidence." *Id*. at 873-74 (citing 20 C.F.R. § 718.202 (a)(1)-(4)). None of the regulatory presumptions set forth in section 708.202(a)(3) were applicable in this case, and the ALJ determined that chest X-rays and CT scan evidence did not establish that Mr. Jones had pneumoconiosis.

The ALJ then considered the autopsy and medical evidence together. He detailed the autopsy report of Dr. Randolph, the hospital pathologist who performed the autopsy, which concluded that Mr. Jones' lungs exhibited diffuse alveolar damage and pulmonary fibrosis. Because Dr. Randolph did not opine as to the cause of Mr. Jones' death, however, the ALJ concluded it did not support a finding that pneumoconiosis contributed to his death.

The ALJ was obliged to evaluate and choose between the conflicting medical opinions presented by two groups of physicians who examined the autopsy slides and reports and Mr. Jones' medical records. One group supported Mrs. Jones' claims: Drs. Green and James, who submitted reports on Mrs. Jones' request, and Dr. Perper, who submitted a report at the request of the District Director of Office of Workers' Compensation Programs (OWCP). This group opined that the miner died as a result of a progressive interstitial lung disease caused by exposure to dust and silica within the coal mines. The other group refuted Mrs. Jones' claims: Drs. Kleinerman, Tuteur, who submitted reports at the request of Energy West, and Dr. Naeye, who submitted a report on behalf of the

-4-

District Director. This latter group opined that the cause of death was a rapidly progressive interstitial fibrosis which destroyed Mr. Jones' lungs over a two-year period, and that this fibrosis would have caused his death even if he had never been exposed to coal dust. When such disputes arise, "it is within the sole province of the ALJ to weigh conflicting medical evidence." *N. Coal Co.*, 100 F.3d at 873; *see also Hansen v. Dir., OWCP*, 984 F.2d 364, 370 (10th Cir. 1993) ("[W]here medical professionals are in disagreement, the trier of fact is in a unique position to determine credibility and weigh the evidence."). The ALJ's decision set forth an exhaustive review of the conflicting medical reports and described in detail his reasons for crediting and discrediting the opinions of the many physicians. Ultimately, the ALJ gave greater weight to the opinions of Drs. Green, James and Perper.

On appeal, Energy West contends that the ALJ: (1) failed to weigh the radiological evidence with the medical opinion evidence; (2) failed to consider the opinions of physicians who treated Mr. Jones during his lifetime; (3) failed to address contradictions in assessment of autopsy findings; and (4) erred in determining pneumoconiosis hastened Mr. Jones' death. We are satisfied from our review that the ALJ satisfied his obligation under 30 U.S.C. § 923(b) to consider all relevant evidence and under § 718.202, which expressly permits a finding that pneumoconiosis hastened a miner's death by medical opinion

testimony notwithstanding the presence of negative X-ray evidence. *See* § 718.202(a)(4). We agree with the Board that the ALJ's failure to explicitly weigh the medical reports of physicians who examined the miner during his lifetime was harmless because the other medical evidence relied upon by the ALJ was largely based upon the miner's autopsy records and slides, which are more reliable because they allow for more complete examination of the lungs. *See Terlip v. Dir., OWCP*, 8 BLR 1-363, at 1-364 (DOL Ben. Rev. Bd. 1985) (holding that administrative law judge's deference to autopsy evidence over X-ray evidence was reasonable because "autopsy evidence is the most reliable evidence of the existence of pneumoconiosis").

Further, we disagree with Energy West's contention that the ALJ ignored "contrary" evidence from Dr. Randolph, the autopsy prosecutor. Dr. Randolph did not, as Energy West suggests, make a finding that there was no evidence of pneumoconiosis; instead, as the ALJ found, he made no assessment with respect to the existence of the disease. Energy West presents numerous arguments asserting the general proposition that the ALJ erred in crediting certain medical opinions over others. We have carefully reviewed the ALJ's decision and all of the medical evidence in the record. The ALJ fully explained why he credited certain evidence over other evidence and how he reached the conclusion that the miner's death was hastened by pneumoconiosis. We find that the ALJ's reasons

-6-

for crediting some physician reports and opinions over others were, in all instances, well-supported by the record, rational and reasonable. Energy West simply disagrees with the reasons the ALJ gave for weighing the conflicting evidence as he did. As the Board correctly concluded, however, the reasons advanced by the ALJ were legally proper and they were supported by substantial evidence. Finally, we disagree with Energy West's contention that, in finding the pneumoconiosis hastened the miner's death, the ALJ erred in failing to find pneumoconiosis reduced his life by a specific, estimable time. *See N. Coal Co.*, 100 F.3d at 874 ("we . . . adopt the Director's interpretation of a 'substantially contributing cause or factor leading to the miner's death' as meaning hastening death to *any* degree") (emphasis added).

We conclude that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. The Decision and Order of the Benefits Review Board is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge